IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:17-cr-00074-3 |
| Plaintiff, | : | Judge Dlott |
| v. | : | |
| RICARDO MAXWELL, | : | |
| Defendant-Movant. | | |

**SECOND MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)**

Ricardo Maxwell has severe and debilitating medical conditions which make him inappropriate for the prison environment.  He is not a threat to the community and moves this Court for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Mr. Maxwell previously filed a motion for compassionate release with this Court on May 21, 2021.  (Motion to Reduce Sentence, R. 315.)  On July 15, 2021, this Court acknowledged the multiple severe medical conditions from which Mr. Maxwell suffered however, denied the motion for compassionate release finding that Mr. Maxwell had failed to exhaust his administrative remedies.  (Order Denying Without Prejudice Defendant's Motion to Reduce Sentence, R. 319, Page ID# 2363.). Since the Court's order Mr. Maxwell has petitioned the warden at FMC-Rochester and 30 days have elapsed since the institution received the petition.  Mr. Maxwell, having exhausted his administrative remedies for compassionate release, now seeks the sentence reduction from this Court.

1

Respectfully submitted,

__s/ Wendy R. Calaway_____
WENDY R. CALAWAY (Ohio Bar 0069638)
The Law Office of Wendy R. Calaway, Co., LPA
810 Sycamore Street, Suite 117
Cincinnati, OH 45202
Telephone (513) 351-9400
Email wcalaway@gmail.com

Attorney for Ricardo Maxwell

I.      **Introduction**

This case involved the investigation around the possession and distribution of marijuana. (Sentencing Hearing, T. p. 11.)  Based on the statute and plea agreement, Court imposed a sentence of 60 months in the Federal Bureau of Prisons in this case on March 12, 2020. (Judgment, R. 257.)  Mr. Maxwell originally had a surrender date in August 2020 to begin serving that sentence.  After the sentencing date, but prior to the report date, Mr. Maxwell suffered a life threatening and incapacitating medical event – an aortic aneurysm.  (*See* Medical Records, attached as Exhibit 1.)  On July 21, 2020, this Court entered an Order extending the surrender date to February 26, 2020, because of the severity of Mr. Maxwell's medical condition. In that entry, the Court found that Mr. Maxwell, ". . . continues to suffer debilitating symptoms related to heart disease, aortic aneurysm, pulmonary arterial hypertension and a history of pulmonary embolism.  Indeed, his medical records indicate that he is too severely disabled to be incarcerated at this time." (Order, 7/21/20, R. 276.)  On February 12, 2021, the Court again extended the surrender date to June 4, 2021, because of Mr. Maxwell's medication condition. (Order, 2/12/21, R. 312.).  At present, Mr. Maxwell's medication condition is dire, and it is getting worse.  In May 2021, Mr. Maxwell filed a motion for compassionate release with this Court.  On July 15, 2021, this Court acknowledged the multiple severe medical conditions from which Mr. Maxwell suffered however, denied the motion for compassionate release because of Mr. Maxwell's failure to exhaust his administrative remedies.  (Order Denying Without Prejudice Defendant's Motion to Reduce Sentence, R. 319, Page ID# 2363.). Since the Court's order Mr. Maxwell has petitioned the warden at FMC-Rochester for release and more than 30 days have elapsed since the institution received the petition.  (*See* Petition to BOP and postal receipts attached as Exhibit 7, 8 & 9.)  Mr. Maxwell, having exhausted his administrative

remedies for compassionate release, now seeks the sentence reduction from this Court.

Mr. Maxwell is now asking this Court to reduce his sentence to time served or to modify the sentence to probation pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). As amended by the First Step Act, the compassionate release statute allows courts to reduce sentences for "extraordinary and compelling" reasons. As this Court has previously noted, Mr. Maxwell suffers from a series of debilitating and life-threatening illnesses that make him unsuitable for prison. (Order, 7/21/20, R. 276.) These include: heart disease, aortic aneurysm, pulmonary arterial hypertension, a history of pulmonary embolism (blood clots in the lung), spinal cord infarction rendering him unable to dress or bathe himself. (*See* Physician letters, attached as Exhibits 2, 3, 4, 5 & 10 and Caregiver letter, attached as Exhibit 11; Medical Records attached as Exhibit 1 and 6.). In addition to these life-threatening conditions, Mr. Maxwell is particularly susceptible to contracting and suffering life threatening complication of the coronavirus due to his weaken immune system. (Physician letter, Exhibits 5 & 10.) He is not eligible for the COVID vaccine because of his history of blood clots. (*See* Dr. Kemper letter of 5/19/21, attached as Exhibit 5.) These conditions provide an extraordinary and compelling basis for sentence reduction. The risk of COVID in a prison setting is compelling and growing worse with the onset of the Delta variant. (Incarcerated and Infected: How the virus tore through the U.S. Prison System, https://www.nytimes.com/interactive/2021/04/10/us/covid-prison-outbreak.html, last accessed May 20, 2021.)

## II. LAW AND ARGUMENT

### A. This Court has authority to consider Mr. Maxwell's motion.

Although the compassionate release statute previously permitted sentence reductions only upon motion of the Director of the Bureau of Prisons (BOP), Congress expanded the statute in

4

the First Step Act of 2018. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018). As amended, § 3582(c)(1)(A)(i), now permits courts to consider motions filed by the defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"

The reason for the expansion to include defense-filed motions was the "documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants." *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020). Accordingly, "while the First Step Act did preserve the BOP's role relative to a sentence reduction in certain limited respects, it eliminated the BOP Director's role as the *exclusive channel* through which a sentence reduction could be considered by courts." *Id*. (emphasis in original). As set forth below, exhaustion of administrative remedies have been met or alternatively should be waived in this case.

### i. Petitioner has exhausted his administrative remedies

A court may modify a previously imposed term of imprisonment when a defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. 3582(c)(1)(A). Mr. Maxwell was ordered to surrender to the Federal Bureau of Prisons at FMC Rochester. (See Court Order 7/15/21, R. 319, Page ID# 2363.). On July 21, 2021, through counsel, Mr. Maxwell petitioned Warden Steve Kallis at FMC Rochester for early released based on debilitating medical conditions. (*See* Letter to Warden, Exhibit 7.). This letter was received by the warden's office on July 26, 2021. (*See* Postal receipts, Exhibits 8 & 9.). More than 30 days have elapsed since the

warden's office received the petition and no action has been taken on Mr. Maxwell's behalf by the Bureau of Prisons.

### ii. Petitioners are not required to exhaust administrative remedies where doing so would be futile or impossible

Although Mr. Maxwell has complied with the statutory requirements for seeking action from the bureau of prisons prior to filing with this Court, the statute does not require such action when doing so would be futile. Federal courts have the statutory authority to modify an imposed term of imprisonment for two reasons: compassionate release under 18 U.S.C. § 3582(c)(1) or based on a change in the sentencing guidelines under 18 U.S.C. § 3582(c)(2). Until the First Step Act was passed in December of 2018, motions for compassionate release could only be brought to the Court by the Director of the Bureau of Prisons. However, after the December 2018 passage of the First Step Act, defendants may now bring their own motions for compassionate release after exhausting administrative remedies within the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Normally, a defendant exhausts his or her administrative remedies by requesting that the warden of his or her BOP institution move for a reduced sentence on his or her behalf and then either (a) having the request granted, (b) having the request denied and appealing through the BOP's administrative remedies program, or (c) having the request remain pending for 30 days without a decision by the warden, after which the defendant can file his/her motion for a reduction in sentence directly with the district court. 18 U.S.C. § 3582(c)(1)(A). However, where a petition to the warden would be futile or impossible, the requirement can be waived.

For example, when a defendant is serving a prison term in an institution without a BOP warden, there is no warden to whom the defendant can address the initial request.[1] Any attempt

---

[1] *See United States v. Jepsen,* No. 3:19-CV-00073(VLB), 2020 WL 1640232, at *3 (D. Conn. Apr. 1, 2020) (where defendant was serving sentence at a non-BOP detention facility neither the

6

to exhaust administrative remedies would be futile and thus the normal exhaustion of administrative remedies is waived. *United States v. Jepsen*, No. 3:19-CV-00073(VLB), 2020 WL 1640232, at *3 (D. Conn. Apr. 1, 2020); *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *1 (E.D. Wash. Mar. 31, 2020). Similarly, when a defendant has not yet surrendered to the Bureau of Prisons attempts at exhaustion would be futile. See e.g., *United States v. Hussain*, 3:16-cr-00462-CRB, at 4-5 (N.D. Cal. October 6, 2020) (holding that a pre-surrender defendant had exhausted his administrative remedies even though he was not in BOP custody and thus could decide the motion on the merits, and stating that the language of 18 U.S.C. 3582(c)(1)(A) "requires a defendant to exhaust his administrative rights before moving for relief; it does not expressly require a defendant to exhaust those rights while in custody. Nor does the statute imply that the defendant must be in custody." *United States v. Vernell Butler*, 1:14- cr-00445 (N.D. Ill. April 6, 2020); *United States v. Quinones-Santos*, 3:17-cr-00278-JAG (P.R. September 20, 2020): *United States v. Peter J. Konopka*, 1:17-cr-00616 (N.D. Ill. September 10, 2020); *United States v Joe Turner*, 2:18-cr-0012-LA (E.D. Wisc. September 24, 2020). In this case, Mr. Maxwell is not in custody and there is no warden assigned to him. There is no opportunity for him to file for compassionate release with a warden. Doing so randomly would be futile and therefore, this requirement should be waived.

        **ii.**      **In the alternative, Mr. Maxwell does not have to exhaust administrative remedies the delay it could cause catastrophic health**

---

warden at the facility nor the BOP would consider compassionate release request); *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *1 (E.D. Wash. Mar. 31, 2020) (where defendant was serving sentence in a county jail, no warden could process her request to file a motion for a reduction in sentence). *See also* Docket No. 129, Joint Submission, *United States v. Ghorbani*, No. 1:18-CR-00255-PLF (D.D.C. Apr. 3, 2020) (available through PACER at https://ecf.dcd.uscourts.gov/doc1/04517753202) (agreement by the United States and defendant that exhaustion should be waived as futile where "although the defendant has been designated to a BOP facility, his transport has been delayed indefinitely and therefore a determination of whether he is eligible for release through BOP's programs cannot be made).

**consequence.**

Mr. Maxwell has complied with the requirement to first petition the bureau of prisons for release before seeking release from this Court. However, excuse from compliance with the normal the BOP's administrative exhaustion requirements, which take at least 30 days and can go on much longer, is warranted given the documented and serious national emergency. *See Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (*quoting Granberry v. Greer*, 481 U.S. 129, 134 (1987)) (recognizing that "exceptional circumstances of peculiar urgency" can excuse exhaustion). As several district courts have recognized in recent months, waiver of any exhaustion of administrative remedies requirement is justified, given the extraordinary threat posed by the quickly spreading COVID-19 pandemic, particularly as to those in a high-risk group who are confined in a detention facility. *United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 (D. Conn. Apr. 8, 2020) (excusing exhaustion requirement because "[e]ven a few weeks' delay carries the risk of catastrophic health consequences" for prisoner in high risk group); *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirement, given defendant's advanced age, health conditions putting him in a high risk group for complications and death resulting from COVID-19, and fact that he was in a detention facility where prisoners live in crowded conditions); *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) (waiving § 3582(c)(1)(A)'s exhaustion requirement where delay carried the risk of the vulnerable defendant contracting COVID-19); *United States v. Colvin*, No. 19 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences,

8

the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); *United States v. Powell*, 94 Cr. 316, ECF No. 98 (D.D.C. Mar. 28, 2020) (waiving exhaustion under § 3582(c)(1)(A) where the [c]ourt found that "requiring defendant to first seek relief through the [BOP] administrative process would be futile"); *see also Matter of Extradition of Toledo Manrique*, No. 19-MJ-71055, 2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020) (refusing to delay consideration of release to await evidence of an outbreak in the jail because that "may be too late"). Waiver of any administrative exhaustion requirement is justified here because of Mr. Maxwell's vulnerable medical condition and the alarming speed at which COVID-19 spreads, especially within confines of the prison environment.

> **B.** **Mr. Maxwell has several debilitating physical conditions and extraordinary and compelling reasons for a sentence reduction.**

In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The policy statement issued in exercise of that authority, U.S.S.G. § 1B1.13, provides examples of "extraordinary and compelling reasons" in the application notes. The examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health combined with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1(A)-(C). The commentary also includes a fifth catch-all provision for "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Bureau of Prisons U.S.S.G. § 1B1.13, comment n.1D.

A growing number of district courts have concluded the Commission lacks a policy statement applicable to the post-First Step Act statute. *United States v. Mondaca*, No. 89-CR-0655

9

DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020) (internal quotation marks omitted); *see also United States v. Brown*, 411 F. Supp. 3d 446, 449-50 (S.D. Iowa 2019) (citing cases). In *United States v. Cantu*, the Court explained: Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582. *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) (emphasis in original). Similarly, in *Redd*, the court noted that § 1B1.13 "by its terms applies only to motions for compassionate release filed by the BOP Director, not motions filed by defendants." *Id.*, 2020 WL 1248493, at *6. Therefore, the court concluded, "there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *Id*. Even where courts have not deemed § 1B1.13 entirely inapplicable due to the lack of amendment, they have held that judges have authority based on the catch-all provision in Application Note 1(D) to find extraordinary and compelling reasons other than those listed. *See, e.g.*, *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, *3 (D. Me. July 11, 2019) (stating that the existing policy statement provides "helpful guidance," but "is not ultimately conclusive given the statutory change"). In *Redd*, the court explained that "Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance." *Redd*, 2020 WL 1248493, at *7 (citing cases); *see also United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is

that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." (internal quotation marks omitted)).

The government conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). The court in *Young* followed the majority of district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *Id.*[2]

### i. Mr. Maxwell is suffering from debilitating medical conditions

Mr. Maxwell suffers from a series of debilitating and life-threatening illnesses that make him unsuitable for prison. He actively suffers from acute kidney injury, acute blood loss anemia, acute respiratory insufficiency, ascending aortic dissection, encephalopathy, essential hypertension, hepatic injury, hypervolemia, problems involving his surgical incision and

---

[2] *See also United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *2-3 (D. Utah Feb. 18, 2020) ("[A] majority of district courts to consider the question have embraced Mr. Maumau's position" that limiting the catch-all provision to circumstances identified by the BOP is inconsistent with the law) (citing ten other cases); *Brown*, 411 F. Supp. 3d at 451 ("[I]f the [First Step Act] is to increase the use of compassionate release, the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it. . . . Thus, the Director's prior interpretation of 'extraordinary and compelling' reasons is informative, but not dispositive." (internal quotation marks and citations omitted)); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

11

spasticity, heart disease, aortic aneurysm, pulmonary arterial hypertension, a history of pulmonary embolism (blood clots in the lung), spinal cord infarction rendering him unable to dress or bathe himself. (Medical Records, Exhibit 1; Physician letters, Exhibit 2, 3, 4, 5 & 10; Caregiver letter, Exhibit 11.) In addition, compounding his condition, Mr. Maxwell is being treated for obesity and chronic sleep apnea. (Medical Records, attached as Exhibit 12.) In addition to his complete updated medical records demonstrating these conditions, previously both Mr. Maxwell's treating neurologist and his primary care physician have provided information regarding the impact of these conditions and/or opined that Mr. Maxwell is not appropriate for incarceration. (*See* Physician letters, attached as Exhibits 2, 3, 4 &10.). In addition, his treating medical physicians have noted that that he is a great risk for COVID-19 and contracting the disease may cause his death. (*See* Dr. Kemper letter of 5/13/2021, attached as Exhibit 5, *see also* Exhibits 2, 4, 5, & 10.) His physician further opined that incarceration is not an appropriate setting for him to live. (See Dr. Kemper letter of 5/13/2021, attached as Exhibit 4.) Mr. Maxwell's medical conditions prevent his eligibility for the COVID vaccine, because of his history of blood clots, leaving him exposed to an infection for which he has a heightened risk of death. (*See* Dr. Kemper letter of 5/19/21, attached as Exhibit 5.) This Court previously made a finding that Mr. Maxwell's medical records demonstrated that he ". . . continues to suffer debilitating symptoms related to heart disease, aortic aneurysm, pulmonary arterial hypertension and a history of pulmonary embolism. Indeed, his medical records indicate that he is too severely disabled to be incarcerated at this time." (Order, 7/21/20, R. 276.) Mr. Maxwell's condition has not improved and has worsened significantly.

    **ii.  COVID-19 presents a particularly serious risk to Mr. Maxwell**

Even without the perils of COVID-19 in our community, Mr. Maxwell's extreme medical condition qualifies him for a sentence reduction. However, the danger of COVID-19 to Mr.

12

Maxwell presents an additional extraordinary and compelling reason for reduction. On March 11, 2020, the World Health Organization officially classified the new strain of coronavirus which causes COVID-19 as a pandemic. *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 – 11 March 2020*, World Health Organization (Mar. 11, 2020), https://bit.ly/2W8dwpS. COVID-19 is a serious disease that makes certain populations of people severely ill and can lead to death. About 20% of COVID-19 patients require hospitalization, about 10 times more than the percentage of patients with the flu. Pien Huang, How The Novel Coronavirus And The Flu Are Alike ... And Different, *www.npr.org* (Mar. 20, 2020) at https://www.npr.org/sections/goatsandsoda/2020/03/20/815408287/how-the-novel-coronavirus-and-the-flu-are-alike-and-different.

As of May 20, 2021, COVID-19 has infected over 164 million people worldwide, leading to close to 3.4 million deaths. (World Heath Organization WHO Coronavirus Dashboard, https://covid19.who.int/, last accessed May 20, 2021.) In the U.S. alone there have been 32 million infections and over 580,000 deaths. (*Id.*) Conditions of imprisonment create the ideal environment for the transmission of contagious diseases. Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (2007), https://doi.org/10.1086/521910. "Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced." Centers for Disease Control and Prevention (CDC), *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. The CDC has recognized the difficulty of preventing the introduction of COVID-19 into prison facilities.

There are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff ingress and egress; transfer of incarcerated/detained persons between facilities and systems, to court appearances, and to outside medical visits; and visits from family, legal representatives, and other community members. Some settings, particularly jails and detention centers, have high turnover, admitting new entrants daily who may have been exposed to COVID-19 in the surrounding community or other regions. *Id.* Crowding, inadequate ventilation, and security issues all contribute to the spread of infectious disease in jails and prisons. Martin Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators'*, NPR (Mar. 13, 2020), https://www.npr.org/2020/03/13/ 815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators. Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content. Keri Blakinger & Beth Schwarzapfel, *How Can Prisons Contain Coronavirus When Purell is a Contraband?*, ABA Journal (Mar. 13, 2020), https://www.abajournal.com/news/article/when-purell-is-contraband-how-can-prisons-contain-coronavirus. Medical care of prisoners is limited at the best of times.[3] Incarcerated people are infected with the coronavirus at more than five times the rate of those not incarcerated. (Brendan Saloner, PhD, Kalind Parish, MA, Julie A. Ward, MN,

---

[3] *See* U.S. Dep't of Justice Office of the Inspector General, *Review of the Federal Bureau of Prisons' Medical Staffing Challenges* (Mar. 2016), https://oig.justice.gov/reports/2016/e1602.pdf (finding that the BOP experienced chronic medical staff shortages and failed to take adequate measures to address them, leading to problems meeting the medical needs of prisoners, requiring the use of outside hospitals, and endangering the safety and security of institutions); U.S. Dep't of Justice Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (Rev. Feb. 2016), https://oig.justice.gov/reports/2015/e1505.pdf (finding that BOP facilities and services, including medical services, were inadequate to meet the needs of an aging prison population leading to delays in medical treatment for prisoners with acute and chronic heart and neurological conditions, who wait an average of 114 days to see medical specialists); David Patton, S*tatement from Federal Defenders of New York*, FEDERAL DEFENDERS OF NEW YORK (Mar. 8, 2020), https://federaldefendersny.org/about-us/news/statement-from-federal-defenders-of-new-york.html.

RN (July 8, 2020), *COVID-19 Cases and Deaths in Federal and State Prisons,* Journal of American Medical Association.) As of January 7, 2021 more than 433,000 inmates and staff and have been infected with the coronavirus and at least 1,960 have died. (Coronavirus and the U.S.: Latest Map and Case Count https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html, last accessed 1/26/21.). While the vaccine is currently in distribution, not everyone is required to take the vaccine. (U.S. prison guards refusing vaccine despite COVID-19 outbreaks, Modern Healthcare, March 15, 2021, https://www.modernhealthcare.com/government/us-prison-guards-refusing-vaccine-despite-covid-19-outbreaks, last accessed May 20, 2021.) The rates of incarcerated people accepting the vaccine is around 60% reflecting trends of the population in general. (All Federal Inmates to be Offered Vaccine, NPR, April 16, 2021, https://www.npr.org/2021/04/16/988237102/all-federal-inmates-to-be-offered-vaccine-by-mid-may-bop-director-says, last accessed, May 20, 2021.) Not everyone is eligible for the vaccine, leaving those in compromised medical conditions like Mr. Maxwell vulnerable.

    **C.**    **With full consideration of the § 3553(a) factors, including the COVID-19 pandemic, Mr. Maxwell's time served or a sentence of home incarceration constitutes a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing.**

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Under all the circumstances in this case, the Court should conclude that the time that Mr. Maxwell has already served on home incarceration is sufficient to satisfy the purposes of sentencing or that no further sentence is necessary in this case or that a sentence of probation is sufficient. Under *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), the Court can, and indeed must, consider post-offense developments under § 3553(a).

Here, the overriding factors under § 3553(a) that were not present at the time of sentencing were Mr. Maxwell's devastating medical diagnosis, deteriorating medical condition, the COVID-19 pandemic, and the serious risk it presents. Although the circumstances of the present offense qualified Mr. Maxwell for the serious sentence this Court originally imposed, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness. From the beginning of this matter (July, 5, 2017), Mr. Maxwell has been out of custody on an OR bond and remains so at this time without incident. (Order Setting Conditions of Release, R. 44.) This case involves a conspiracy with intent to distribute marijuana. This was not a violent crime. It should also be noted that since Mr. Maxwell's conviction for conspiracy to distribute marijuana that both at the state and federal level there have been significant trends toward the decriminalization of marijuana. For example, on December 4, 2020 the United States House of Representatives passed the More Act by a vote of 268 to 164. (H.R. 3884 –MORE Act of 2020, 116th Congress.) The bill now moves on the Senate for a vote. If passed it would decriminalize marijuana at the federal level. The bill also contains a provision for expunging past marijuana convictions and ensuring that those harmed by prior marijuana prosecutions have an opportunity to participate in the legal marijuana market. This legislative activity is in line with public opinion on this topic and trends in state's moving toward decriminalization.

Mr. Maxwell forfeited his business as a result of the conviction in this case. He has very limited mobility and is essentially homebound except for doctor's appointments. Indeed, he is unable to dress or bathe without assistance. The public does not need to be protected from Mr. Maxwell. The Eighth Amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody. *Helling v. McKinney*, 509 U.S. 25, 28 (1993); *see also Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (applying *Helling* to

exposure to asbestos); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004) (applying *Helling* to contagious diseases caused by overcrowding conditions). The § 3553(a) factors can be met in this case by an order of probation.

### III. Conclusion

In the Court's previous order extending the self-surrender date, this Court noted that "[i]f Mr. Maxwell's condition does not improve significantly . . . the Court will entertain additional motions related to his suitability for incarceration." (Order, R. 276, p. 4.) As is evident from the medical records attached, Mr. Maxwell's condition has worsened. He is not suitable for incarceration, in fact, incarceration would be life-threatening. Mr. Maxwell's case is appropriate for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) and he requests that this Court reduce his sentence accordingly.

Respectfully submitted,

__s/ Wendy R. Calaway_____
WENDY R. CALAWAY (Ohio Bar 0069638)
The Law Office of Wendy R. Calaway, Co., LPA
810 Sycamore Street, Suite 117
Cincinnati, OH 45202
Telephone (513) 351-9400
Email wcalaway@gmail.com

### CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Motion for Compassionate Release was served by filing it through this Court's ECF filing system, which is to serve it upon all counsel of record.

___s/Wendy R Calaway_____
Wendy R. Calaway