IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
|    Plaintiff, | : | Case No. 1:17-cr-74(3) |
| | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **Order Granting Second Motion to** |
| Ricardo Maxwell, | : | **Reduce Sentence** |
| | : | |
|    Defendant. | : | |

This matter is before the Court on Defendant Ricardo Maxwell's Second Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 320.) The Government has responded in opposition. (Doc. 321.) For the reasons that follow, Maxwell's Motion will be **GRANTED**.

**I.　BACKGROUND**

Defendant Ricardo Maxwell pled guilty, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846. (Doc. 192 at PageID 737.) Specifically, Maxwell admitted that between January 2011 and June 2017, he conspired with others to distribute at least 100 kilograms of marijuana in the Southern District of Ohio. (*Id.* at PageID 743.) Pursuant to the plea agreement, the Court sentenced Maxwell on March 12, 2020 to a 60-month term of imprisonment followed by 15 years of supervised release. (Doc. 257.)

Maxwell served one week in pre-trial custody, from June 28 through July 5, 2017. (Doc. 44.) He has been free on bond since July 5, 2017 without incident and has a self-surrender date of December 6, 2021 (Doc. 316). While out on bond, Maxwell suffered serious medical events, including an aortic dissection and a spinal cord stroke. (Doc. 320-6 at PageID 2552–53.)

Maxwell was originally due to self-surrender to the Bureau of Prisons ("BOP") on May 14, 2020 (Doc. 257), but in light of his health conditions, the Court extended his current self-surrender date to December 6, 2021.[1]  (Doc. 316.)

On May 21, 2021, Maxwell filed his first Motion to Reduce Sentence, contending release was warranted due to his severe and debilitating medical conditions.  (Doc. 315.)  The Court denied Maxwell's first Motion without prejudice, finding that he failed to exhaust his administrative remedies because there was no evidence he petitioned the warden at FMC Rochester and waited the obligatory 30-day period prior to filing his Motion.  (Doc. 319 at PageID 2363.)  Thereafter, on July 21, 2021, Maxwell petitioned the warden of FMC Rochester for compassionate release.  (Doc. 320-7.)  The warden's office received Maxwell's petition on July 26, 2021 (Doc. 320-9), but has not provided a response.  (Doc. 320 at PageID 2368–69.)  Maxwell then filed this second Motion on September 9, 2021.  (*Id.*)

## II.  STANDARD OF LAW

Maxwell seeks a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Court lacks authority to resentence a defendant, except as permitted by statute.  *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008).  The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'"  *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)).  A defendant seeking a sentence reduction bears the burden of proof.  *Id.* at 426; *see also United States v. Hill*,

---

[1] The Court also extended Maxwell's self-surrender date on several prior occasions for the same reason.  (Docs. 263, 276, 312.)

No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

If a defendant has exhausted his or her administrative remedies, the district court must then (1) determine whether "extraordinary and compelling reasons" warrant a reduction and (2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1108 (6th Cir. 2020).[2] "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, No. 21-1275, 12 F.4th 555, 2021 WL 3855665, at *3 (6th Cir. Aug. 30, 2021) (quoting 28 U.S.C. § 994(t)) (alteration in original). Courts generally have discretion to define what constitutes

---

[2] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id.* at 1111; *see also United States v. Elias*, 984 F.3d 516, 519–520 (6th Cir. Jan. 6, 2021).

"extraordinary and compelling" reasons. *Id.* Nonetheless, the Sixth Circuit recently defined two restrictions on that discretion:

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

*Id.* at *4.

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a). These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider the non-retroactive changes in law relevant to sentencing as part of its weighing the § 3553(a) sentencing factors. *See Hunter*, 2021 WL 3855665, at *6; *see also United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. June 3, 2021). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

### III. ANALYSIS

Maxwell seeks sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to his serious medical conditions. As set forth below, the Court does not lightly grant compassionate release due to medical concerns, but this is a unique situation in which Maxwell's medical conditions rise to a rare and extraordinary level meriting his compassionate release.

### A. Exhaustion of Administrative Remedies

The Court will first consider whether Maxwell has exhausted his administrative remedies, as it previously denied Maxwell's first Motion due to failure to satisfy this prerequisite. Pursuant to 18 U.S.C. § 3582(c)(1)(A), the exhaustion requirement is satisfied if 30 days have lapsed from the warden's receipt of the defendant's request for release. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Section 3582(c)(1)(A)'s administrative exhaustion requirement—though not a jurisdictional requirement—is a mandatory claim-processing rule. *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Harmer v. Neighborhood Hous. Servs. of Chi.*, — U.S. —, 138 S. Ct. 13, 17 (2017)). "Because 'Congress sets the rules' when it comes to statutory exhaustion requirements, the judiciary has a role to play in exception-crafting 'only if Congress wants [it] to.'" *Id.* (quoting *Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 1857 (2016)) (alteration in original). According to the Sixth Circuit, "[n]othing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions." *Id.*

The Government contends the Court cannot consider the merits of Maxwell's Motion because Maxwell is not in BOP custody, as his self-surrender date has been extended to December 6, 2021. (Doc. 321 at PageID 2779–80.) The Sixth Circuit has not yet addressed whether a court can adjudicate a compassionate release motion prior to the defendant being in BOP custody, and district courts that have addressed this issue have reached different conclusions.

The majority of district courts have read a custodial precursor into 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement. *See, e.g., United States v. Nascimento*, No. 5:21-02-KKC, 2021 WL 2002437, at *1 (E.D. Ky. May 19, 2021) ("By requiring that a defendant first

approach the warden at his institution to seek compassionate release, the statute, by its plain text, contemplates that a defendant who seeks compassionate release already will be in the custody of BOP.") (quoting *United States v. Staggs*, No. 3:18-CR-375-SI, 2020 WL 7625229, at *3 (D. Or. Dec. 22, 2020)); *see also United States v. McDonald*, No. 17-20464, 2021 WL 236074, at *1 (E.D. Mich. Jan. 25, 2021) ("Defendant has not—nor can she, as she is not yet in custody—satisfy the statute's mandatory procedural requirements."); *United States v. Verasawmi*, No. 17-254, 2021 WL 2549303 (D.N.J. June 22, 2021); *United States v. Konny*, 463 F. Supp. 3d 402 (S.D.N.Y. 2020).

Of these courts, the district court of the District of New Jersey, in *Verasawmi*, has provided the most thorough analysis. Initially, the court found that the text of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, is "arguably ambiguous" as to whether a defendant must first begin serving his or her sentence before a court can consider a motion for compassionate release, but ultimately concluded the statute contains a custodial requirement. 2021 WL 2549303, at *5, 8. First, the court noted that the statute authorizes a court to "impose a term of probation or supervised release . . . that does not exceed the *unserved portion* of the original term of imprisonment," thereby implying the defendant has already served a portion or his or her sentence. *Id.* at *5 (quoting 18 U.S.C. § 3582(c)(1)(A)) (emphasis in original). Second, the court found that a contrary interpretation "effectively eviscerates BOP's role in the statutory scheme" because BOP cannot consider a compassionate release request until the defendant reports to begin his or her sentence. *Id.* at *6. And finally, the House Report underlying the statutory amendment "contrasts the authority to 'reduce the term of imprisonment,' as provided in 18 U.S.C. § 3582(c)(1)(A), with the authority under Rule 35 to

6

'reduce a sentence,' only the latter of which authorizes courts to impose 'a lesser type of sentence.'" *Id.* at *7 (citing H.R. REP. NO. 107-685, at 189 (2002)).

Other courts, however, have diverged and found that a court can consider a defendant's motion for compassionate release prior to the defendant being in physical BOP custody. *See, e.g., United States v. Khachtryan*, No. 15-cr-00234-CRB-16, 2021 WL 1110269, at *4 (N.D. Cal. Mar. 23, 2021) ("the [compassionate release] statute does not expressly or implicitly require movants to be in custody"); *United States v. Hambrock*, 520 F. Supp. 3d 827 (E.D. Va. Feb. 19, 2021); *United States v. Hussain*, No. 16-cr-00462-CRB-1, 2020 WL 5910065 (N.D. Cal. Oct. 6, 2020); *United States v. Butler*, No. 1:14-cr-00445-2 (N.D. Ill. Apr. 6, 2020) (Doc. 188) (granting compassionate release to defendant who had been assigned a BOP facility but had not yet reported to the institution). In *Hambrock*, the Government opposed the defendant's motion for compassionate release on the basis that the defendant was not in BOP custody at the time he filed his motion. 520 F. Supp. 3d at 830. The court rejected the Government's assertion and granted the defendant's motion. Although the defendant was not in custody, his prison facility had already been designated and he had filed his motion more than 30 days after sending a request for release to his warden. *Id.* at 829–31. The court reasoned that

> [n]othing in the plain language of the statute requires the defendant to be in custody presently or to have served any portion of his sentence. [The defendant] has submitted a request to the warden of his facility. The request was denied. At least 30 days have passed. This is all that is required by the statute.

*Id.* at 830. Likewise, the court in *Hussain* found the exhaustion requirement satisfied where the defendant, prior to serving any portion of his sentence, was able to request the "'warden of [his] facility' move for relief on his behalf because his facility was designated when [he] was sentenced." 2020 WL 5910065, at *3.

7

The Court finds the latter set of cases most persuasive and joins the other district courts that have found a defendant need not be in physical BOP custody to satisfy the exhaustion requirement.  By its plain terms, the only procedural requirement contained in the statute is that a compassionate release motion is brought "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*." 18 U.S.C. § 3582(c)(1)(A) (emphasis added).  And "[i]f the language of the statute is clear, the court applies the statute as written." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 253 (6th Cir. 2020).

In this case, Maxwell has abided by the statute's plain language.  The Court will not impose any further requirement not specifically provided for in the statute,[3] in a similar fashion as the Court refrains from crafting any exceptions to the exhaustion requirement.  *See Alam*, 960 F.3d at 834 ("Because 'Congress sets the rules' when it comes to statutory exhaustion requirements, the judiciary has a role to play in exception-crafting 'only if Congress wants [it] to.'") (quoting *Blake*, 136 S. Ct. at 1857) (alteration in original).  The United States Marshal's Service informed the Court that Maxwell has been designated to FMC Rochester.  (Doc. 319 at PageID 2363.)  On July 21, 2021, Maxwell petitioned the warden at FMC Rochester for compassionate release based on his medical conditions.  (Doc. 320-7.)  The warden's office received Maxwell's request on July 26, 2021.  (Docs. 320-8, 320-9.)  More than 30 days have

---

[3] The compassionate release statute provides courts with authority to "*reduce the term of imprisonment* (and may impose a term of probation or supervised release . . . that does not exceed the *unserved portion* of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1)(A) (emphasis added).  The court in *Verasawmi* construed this language as meaning that when a defendant has yet to begin serving his or her sentence, there is no "unserved portion." 2021 WL 2549303, at *5.  The Court finds this reasoning unavailing in this case as Maxwell served one week in pre-trial custody prior to being released on bond (Doc. 44), and thus, the Court is able to reduce Maxwell's sentence to time served.

elapsed since Maxwell's request was received and prior to the filing of the instant Motion. Accordingly, the Court finds that Maxwell has satisfied the exhaustion requirement as written.

### B. Extraordinary and Compelling Reasons

The Court will now consider whether Maxwell is able to demonstrate "extraordinary and compelling reasons" for his compassionate release. Maxwell argues that he suffers from a series of severe and debilitating medical conditions that make him unsuitable for prison, even without the presence of COVID-19.[4] (Doc. 320 at PageID 2374; Doc. 322 at PageID 2800.) Given the severity of Maxwell's medical conditions, the Court finds that Maxwell has satisfied the extraordinary and compelling reason requirement.

Pursuant to the Sixth Circuit's holding in *Jones*, a district court has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111. Nonetheless, the Court will reference U.S.S.G § 1B1.13 as a useful starting point to determine whether extraordinary and compelling reasons exist. The application note to U.S.S.G. § 1B1.13 indicates that an extraordinary and compelling reason exists if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G § 1B1.13, cmt. n.1(A)(ii)(I); *see also United States v. Eubanks*, No. 3:06-CR-105-TBR, 2021 WL 3557653, at *4 (W.D. Ky. Aug. 11,

---

[4] Maxwell also asserts compassionate release is warranted because given his underlying medical conditions, he is at an increased risk of severe illness or death if he contracts COVID-19. (Doc. 320 at PageID 2375–76; Doc. 322 at PageID 2800–01.) Generally, the Court is not inclined to grant compassionate release based on the existence of COVID-19. *See United States v. Santos*, No. 2:14-cr-4, 2020 WL 7767621, at *3 (S.D. Ohio Dec. 30, 2020) (finding the existence of COVID-19 in society and the generalized risk of contagion in prisons standing alone are not sufficient to constitute extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i)). This is particularly so where the defendant has the ability to receive a COVID-19 vaccine but has chosen not to do so. *See United States v. Ho*, No. 1:17-cr-0057, 2021 WL 4440189, at *4 (S.D. Ohio Sept. 28, 2021). Maxwell has declined to receive a COVID-19 vaccination as his treating physician recommended against it due to Maxwell's history of blood clots and conflicting medications. (Doc. 320-5.) As the Court finds that Maxwell's debilitating medical conditions, standing alone, justify his compassionate release, the Court need not decide Maxwell's Motion on the basis of COVID-19.

2021) (granting compassionate release to defendant with a serious medical condition resulting from two strokes).

The Court is well aware of Maxwell's medical conditions. At the Sentencing Hearing, the Court was advised that in October 2019, Maxwell suffered an aortic dissection, a catastrophic medical event, which required life-saving procedures, including a "total aorta replacement." (Doc. 272 at PageID 1067; Doc. 320-1 at PageID 2382.) Recognizing Maxwell's significant medical issues, the Government requested the Court consider sentencing Maxwell to a federal medical facility (Doc. 272 at PageID 1073), and the Court made such recommendation (Doc. 257). Hence, Maxwell was designated to FMC Rochester.

Although the Court knew of Maxwell's aortic dissection at the time of sentencing, it is clear that Maxwell's medical conditions have worsened significantly.[5] Maxwell is 48 years old and, according to his medical records, currently suffers from a host of severe medical conditions, including acute kidney injury, acute blood loss anemia, acute respiratory insufficiency, ascending aortic dissection, encephalopathy, essential hypertension, hepatic injury, hypervolemia, spasticity, problems involving a surgical incision, heart disease, aortic aneurysm, pulmonary arterial hypertension, and a history of pulmonary embolism. (Doc. 320 at PageID 2374–75; Doc. 320-1 at PageID 2381; Doc. 320-6 at PageID 2552, 2569.) He is also being treated for obesity and chronic sleep apnea. (Doc. 320-6 at PageID 2672; Doc. 320-12.) Given the extent of his serious health conditions, Maxwell currently requires a variety of medications and the assistance of a caregiver. (Doc. 320-1 at PageID 2381; Doc. 320-6 at PageID 2551; Doc. 320-11.)

Additionally, after the Sentencing Hearing, in December 2020, Maxwell suffered a spinal cord infarction, or a "spinal cord stroke" (Doc. 320-1 at PageID 2529; Doc. 320-6 at PageID

---

[5] Indeed, the Court's prior orders extending Maxwell's self-surrender date were issued in the hope that Maxwell's medical conditions would improve.

10

2552), which has largely rendered him non-ambulatory. He cannot stand or sit for more than 10 to 15 minutes without experiencing extreme pain and numbness in his lower extremities, and he is unable to perform many basic activities of daily life such as cooking, bathing, or dressing. (Doc. 320 at PageID 2375; Doc. 320-10; Doc. 320-11.) As indicated by his caregiver, Maxwell's medical conditions have rendered him "completely unable to care for himself." (Doc. 320-11.)

Maxwell's treating neurologist has indicated that Maxwell is only expected to have a partial and incomplete recovery from the spinal cord stroke and that the full extent of his recovery likely will not change. (Doc. 320-10.) Due to Maxwell's significant medical conditions and physical limitations, his primary care physician has opined that incarceration is not an appropriate setting in which Maxwell should live. (Docs. 320-2, 320-4.)

The Court finds that Maxwell has satisfied his burden of demonstrating extraordinary and compelling reasons for compassionate release. Maxwell's two life-altering medical events—an aortic dissection and spinal cord infarction—have left him with severe physical limitations. As a result, he is essentially confined to his home and, moreover, is incapable of caring for himself. He is physically unable to perform basic activities such as cooking, bathing, or dressing. The significant level of assistance Maxwell now requires due to his severe medical conditions demonstrates he would be unable to provide self-care in a correctional facility. *See United States v. Fletcher*, No. CR 18-3063, 2020 WL 5535734, at *1–2 (D.N.M. Sept. 15, 2020) (finding defendant's severe osteoarthritis of the right and left hip and femoral head avascular necrosis provided extraordinary and compelling reasons for compassionate release); *see also United States v. Bellamy*, No. 15-165(8), 2019 WL 3340699, at *4 (D. Minn. July 25, 2019) (finding defendant's severe and worsening health problems constituted extraordinary and compelling

11

reasons justifying compassionate release). Additionally, his treating neurologist has indicated it is unlikely that his medical situation will ever improve to a level such that he will be able to independently care for himself. Accordingly, the Court finds that Maxwell's severe and debilitating medical conditions rise to the level of extraordinary and compelling reasons sufficient to justify his compassionate release.

## IV. 18 U.S.C. § 3553(a) Sentencing Factors

Consistent with 18 U.S.C. § 3582(c)(1)(A)(i), the Court must next consider whether the § 3553(a) sentencing factors support Maxwell's release. Among the factors to be considered are the nature and characteristics of the defendant's offense; the defendant's criminal history; the need for the sentence imposed to reflect the seriousness of the defendant's conduct; the need to protect the public; the Guidelines range; and the need to avoid unwarranted sentencing disparities. Balancing all of the factors, the Court finds that compassionate relief is appropriate.

The Court finds that the first two factors slightly weigh in favor of compassionate release. Maxwell's instant offense of conspiracy with intent to distribute marijuana is a serious offense. However, it is a non-violent offense. Maxwell's business was one of the three addresses utilized to store, package, and distribute marijuana, but as a result of his conviction in this case he has forfeited that business. (Presentence Investigation Report ("PSR") at ¶ 34; Doc. 192 at PageID 740; Doc. 320 at PageID 2379.) Additionally, Maxwell does not have a significant criminal history, as at the time of sentencing he was assessed a criminal history category of II, representing two prior narcotics convictions. (PSR at ¶¶ 76, 79.) Maxwell was previously incarcerated from 1996 to 2008 for one count of conspiracy to distribute cocaine and marijuana and one count of possession with intent to distribute marijuana, and during that time he obtained his General Equivalency Degree and participated in numerous education and drug education

courses. (*Id.* at ¶ 76.) Once he was released, he was granted an early termination from supervised release due to his positive adjustment to supervision. (*Id.*) Moreover, the Court finds it significant that Maxwell has been free on bond in this case for the past four years without incident, during which time he has also successfully completed mental health treatment. (*Id.* at ¶ 115.)

The Court also finds that Maxwell is not a danger to the community. Maxwell now requires assistance with many essential activities of daily living, such as dressing, bathing, and cooking, and he cannot stand or sit for more than 10 to 15 minutes. (Doc. 320 at PageID 2375; Doc. 320-11.) For all intents and purposes, Maxwell's medical conditions have rendered him homebound aside from doctor's appointments. (Doc. 320 at PageID 2379.) Given Maxwell's severe physical deterioration, he is significantly impeded from engaging in future criminal conduct so as to remove or reduce his risk to the public. *See, e.g., Smith,* No. 15-cr-119 (S.D. Ohio Nov. 10, 2020) (Doc. 327) (defendant's condition was so deteriorated she no longer posed a threat to the community). This factor weighs significantly in favor of granting Maxwell compassionate release.

Lastly, the Court also considers the issue of sentencing disparities as this case involved five co-defendants, who were sentenced to terms of imprisonment ranging from 21 months to 120 months. While the Court acknowledges that granting Maxwell's Motion creates a disparity between Maxwell's sentence and that of his co-defendants given that Maxwell has yet to report to the BOP, this case presents the unique situation in which the disparity is warranted in light of Maxwell's serious and debilitating medical conditions described herein.

For these reasons, the Court concludes that the 18 U.S.C. § 3553(a) sentencing factors support a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

13

### IV. CONCLUSION

For the foregoing reasons, Maxwell's Second Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 320) is **GRANTED**.  Maxwell's previously imposed 60-month term of imprisonment is reduced to one week of imprisonment, time served.  Because Maxwell is a non-violent offender who does not pose a risk to the community, and because the probation department's resources are strained due to COVID-19, the previously imposed 15-year term of supervised release is **VACATED**.  Instead, under 18 U.S.C. § 3582(c)(1)(A), the Court imposes a 12-month term of supervised release, subject to the conditions described herein.  Maxwell's previously imposed conditions of supervised release specified in the Court's Sentencing Order apply to the 12-month term of supervision, except Maxwell need not submit to any drug testing.  Additionally, as a condition of supervised release, Maxwell shall participate in the curfew component of the location monitoring program for a period of 365 days without equipment.  While on curfew in the location monitoring program, he is restricted to his residence every day from 12:00 a.m. to 12:00 a.m., as directed by the probation officer, except for the following approved absences: gainful employment, community service, religious services, medical care, educational or training programs, and at such other times as may be specifically authorized.

**IT IS SO ORDERED**.

S/Susan J. Dlott
Susan J. Dlott
United States District Judge